



UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| EARL DAVID DOWTY, | * | CIV 11-3025-RAL |
|---|---|---|
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | DENYING CERTAIN |
| | * | MOTIONS AND GRANTING |
| DERRIS WAUKAZOO, | * | DEFENDANT'S MOTION FOR |
| | * | SUMMARY JUDGMENT |
| Defendant. | * | |

Plaintiff Earl David Dowty filed his Complaint in this case on October 12, 2011, under 42

U.S.C. § 1983. This Court screened Dowty's Complaint, dismissed certain claims of Dowty's,

allowed Dowty to proceed with a claim against Defendant Derris Waukazoo ("Sheriff Waukazoo")

regarding alleged deliberate indifference to Dowty's serious medical needs, and granted Dowty leave

to proceed in forma pauperis. Doc. 11. This Court now rules on the multiple motions pending in

this case.

**I. Dowty filings and pending motions.**

Dowty has been a party in numerous prior federal cases. Dowty was indicted on charges

before this Court of being a felon in possession of firearm, possession of stolen firearm, and aiding

and abetting in United States v. Richards et al, 11-cr-30008-RAL. Dowty also was indicted before

this Court on two counts of felon in possession of a firearm in United States v. Dowty, 11-cr-30026-

RAL, and on fraud in connection with access device in United States v. Dowty, 11-cr-30027-RAL.

As part of a plea agreement, Dowty pleaded guilty to one count of felon in possession of a firearm in

11-cr-30026-RAL, with the other federal charges being dismissed. This Court sentenced Dowty to 120

months in the custody of the Bureau of Prisons, with supervised release of three years thereafter and

1

responsibility for restitution and a special assessment. <u>United States v. Dowty</u>, 11-cr-30026-RAL, Doc. 38.

Dowty faced those federal charges following a spree of burglaries not within Indian country. During one of the burglaries, a homeowner interrupted the burglary and observed two men, one of whom fit Dowty's description, within his residence. The homeowner attempted to flee, but was shot as he fled. Dowty has been in the custody of Sheriff Waukazoo while facing state court charges in Mellette County, South Dakota, arising out of the burglaries and shooting of the homeowner, all of which occurred outside of Indian country. Dowty has been held at the Winner City Jail awaiting trial, which was completed on September 27, 2012, with Dowty having been found guilty by a jury on 11 of the 13 state court counts. Doc. 119.

After receiving his federal court sentence and then being transferred to state court custody to face the pending state charges, Dowty has filed a number of federal civil cases. This Court has screened and allowed Dowty to proceed with two cases: 1) this very case, 11-civ-3025-RAL, alleging that the person responsible for his state custody—Sheriff Waukazoo—has been deliberately indifferent to Dowty's serious medical needs; and 2) a claim in 12-civ-4002-RAL alleging that certain law enforcement officers violated Dowty's Fourth Amendment rights under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

This Court has screened and dismissed claims in a civil case that Dowty filed as 12-civ-3002-RAL against the State of South Dakota, prosecutor Michael Strain, Sheriff Waukazoo, and state court judge Mark Barnett. 12-civ-3002-RAL, Doc. 6. In 12-civ-3002-RAL, Dowty claimed that the Eleventh and Fourteenth Amendments of the United States Constitution, as well as the 1868 Treaty of Fort Laramie, deprived state officials of jurisdiction over him and the offenses that he allegedly committed. This Court explained why Dowty's claims in 12-civ-3002-RAL did not survive initial

2

screening and why Dowty had no claim against the prosecuting attorney or the state court judge. 12-civ-3002-RAL, Doc. 6. Dowty then appealed to the United States Court of Appeals for the Eighth Circuit, which summarily affirmed this Court's dismissal of Dowty's claims. 12-civ-3002-RAL, Doc. 20.

This Court also screened and dismissed a civil case that Dowty brought against Sheriff Waukazoo, the Attorney General for the State of South Dakota, and Lori Kalenda, as 12-civ-3003-RAL. Again, this Court explained why Dowty did not have viable claims. 12-civ-3003-RAL, Doc. 5. Again, Dowty appealed to the United States Court of Appeals for the Eighth Circuit, which summarily affirmed this Court's rulings and dismissal of Dowty's claims in 12-civ-3003-RAL. 12-civ-3003-RAL, Doc. 19.

In addition to this case and the other cases mentioned above, Dowty also filed civil cases 12-civ-4016-RAL, 11-civ-5101-RAL, and 12-civ-5039-RAL. This Court screened and dismissed the complaints in those cases as frivolous. Dowty's history of civil filings goes back many years. Counting the civil cases referenced above, Dowty has been a plaintiff in eighteen different civil cases. See 01-civ-4037-LLP, 01-civ-4107-LLP, 02-civ-4264-RHB, 04-civ-4192-LLP, 04-civ-5028-KES, 04-civ-5068-RHB, 04-civ-5109-AWB, 05-civ-4083-LLP, 05-civ-4120-LLP, 05-civ-5109-AWB, 05-civ-5076-AWB. Because of the numerous frivolous cases filed by Dowty and under 28 U.S.C. § 1915(g), this Court has barred Dowty from starting any new federal cases, unless he is in "imminent danger of serious physical injury" or pays the filing fee in full. 12-civ-5039-RAL, Doc. 8; see also 28 U.S.C. § 1915(g).

Notwithstanding Dowty's history of frivolous cases, this particular case deserves careful attention and survived screening under 28 U.S.C. § 1915A. Dowty has serious medical conditions,

including but not limited to issues with his left shoulder, right shoulder, and left knee. This Court begins by considering the motions that Dowty has filed since this Court's last substantive Order—Doc. 82, filed June 25, 2012—in which this Court denied 13 motions filed by Dowty.

Since this Court's rulings on June 25, 2012, Dowty has filed 14 new motions—Doc. 84, Doc. 85, Doc. 87, Doc. 89, Doc. 90, Doc. 91, Doc. 101, Doc. 102, Doc. 104, Doc. 105, Doc. 106, Doc. 109, Doc. 112, and Doc. 113. Included in Dowty's new motions is a Motion for Summary Judgment, Doc. 105, although Dowty quixotically also has filed two separate motions seeking a jury trial. Doc. 102; Doc. 106. Dowty's motions make clear that he believes himself entitled to be removed from state custody and entitled to have shoulder surgery forthwith. Doc. 109; Doc. 112; Doc. 113. This Court has reviewed all of Dowty's new motions. For the reasons explained below, this Court concludes that summary judgment for Sheriff Waukazoo ought to enter and that all of Dowty's motions should be denied.

Sheriff Waukazoo, meanwhile, has filed three motions since this Court's last substantive Order on June 25, 2012, in this case. Those motions are: 1) Defendant's Motion to Dismiss, Doc. 92, based on Dowty's refusal to sit for a deposition; 2) Defendant's Motion to Revoke In Forma Pauperis Status and to Dismiss Case, Doc. 94, based on 28 U.S.C. § 1915(g) and Dowty's filing of three or more frivolous cases while an inmate; and 3) Defendant's Motion for Summary Judgment, Doc. 98.

Sheriff Waukazoo's Motion to Dismiss, Doc. 92, is based on Dowty's refusal to participate in a deposition on May 17, 2012. See Doc. 93-1. Under Rule 41(b) of the Federal Rules of Civil Procedure, this Court may dismiss a case if "the plaintiff fails . . . to comply with these rules." Dowty failed to comply with Rule 30(c)(2) of the Federal Rules of Civil Procedure in refusing to

proceed with his deposition. Dowty is not excused from complying with the Federal Rules of Civil Procedure and Orders of this Court simply because he is pro se. Farnsworth v. City of Kansas City, 863 F.2d 33, 34 (8th Cir. 1988). This Court has broad discretion to impose sanctions for Dowty's unjustified refusal to be deposed. Aziz v. Wright, 34 F.3d 587, 589 (8th Cir. 1994). Dismissal of Dowty's case for his unjustified refusal to participate in a deposition, although within this Court's discretion to grant, is a severe sanction for a single instance of discovery abuse. This Court declines to grant Defendant's Motion to Dismiss. Doc. 92.

As this Court has detailed above, Dowty's multiple filings of frivolous cases has resulted in an Order under 28 U.S.C. § 1915(g) debarring future in forma pauperis filings by Dowty absent "imminent danger of serious physical injury." 12-civ-5039-RAL, Doc. 8 at 8; see 28 U.S.C. § 1915(g). The case at hand was filed before that Order entered and before Dowty's filing of five frivolous complaints. See 12-cv-3002-RAL; 12-cv-3003-RAL; 12-cv-4016-RAL; 11-cv-5101-RAL; 12-cv-5039-RAL. The case at hand survived initial screening under 28 U.S.C. § 1915A because Dowty indeed has serious medical issues. Although Dowty has peppered this Court with multiple and repetitive frivolous complaints and motions, this Court declines to grant Defendant's Motion to Revoke In Forma Pauperis Status and to Dismiss. Doc. 94.

## II. Motion for Summary Judgment

### A. Summary Judgment Standard

Defendant's Motion for Summary Judgment, Doc. 98, invokes Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not "a disfavored procedural

5

shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Rule 1 of the Federal Rules of Civil Procedure). On summary judgment, courts view "the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." E.E.O.C. v. CRST Van Expedited, Inc., 679 F.3d 657, 686 (8th Cir. 2012) (quoting Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011)). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(a); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012).

### B. Material Facts Not Subject to Genuine Dispute

Consistent with Local Rule 56.1.A. of the Civil Local Rules of Practice of the District of South Dakota, Sheriff Waukazoo filed a Statement of Material Facts on July 27, 2012. Doc. 100. Dowty did not file the opposing party's required statement of material facts under Local Rule 56.1.B. Dowty, however, has filed multiple pleadings making well known to this Court Dowty's positions on issues, including Dowty's view that he is entitled to shoulder surgery, release from state custody, and summary judgment. This Court has scrutinized Sheriff Waukazoo's Statement of Material Facts, is mindful at this stage to take the facts in the light most favorable to Dowty, and is cognizant that this Court may deem material facts not controverted by Dowty to be admitted under Local Rule 56.1.D. With these principles in mind, this Court has determined that the material facts not subject to genuine dispute are the following.

Dowty was arrested at his home on the Rosebud Indian Reservation on January 8, 2011. 12-civ-4002-RAL, Doc. 1 at 8-9. After his arrest he was transported to Pierre, South Dakota and

6

detained at the Hughes County Jail awaiting trial on federal criminal charges of being a felon in possession of a firearm, possession of a stolen firearm, aiding and abetting, and for fraud in connection with an access device. See United States v. Richards and Dowty, 11-cr-30008-RAL; United States v. Dowty, 11-cr-30026-RAL; and United States v. Dowty, 11-cr-30027-RAL; see also 12-civ-4002-RAL, Doc. 1 at 8. As part of the plea agreement in his federal case, Dowty pled guilty to one count of felon in possession of a firearm in United States v. Dowty, 11-cr-30026-RAL. 11-civ-3025-RAL, Doc. 11 at 1. This Court sentenced Dowty to 120 months in the custody of the Bureau of Prisons, with supervised release of three years thereafter and responsibility for restitution and a special assessment. United States v. Dowty, 11-cr-30026-RAL, Doc. 38.

The federal criminal charges against Dowty followed a spree of burglaries which took place outside reservation boundaries. 11-civ-3025-RAL, Doc. 11 at 1. During one of the burglaries a homeowner interrupted the burglary and observed two men—one of whom fit Dowty's description. Id. The homeowner attempted to flee, but was shot as he fled. Id. Dowty has been awaiting trial on state court charges arising out of the burglaries and shooting of the homeowner. Dowty plead not guilty to all state charges, had a jury trial in Mellette County in September of 2012, and was found guilty by a jury on several charges, including charges of burglary, grand theft, and attempted first degree murder. Doc. 119. Because the burglaries and shooting occurred outside Indian country, Dowty was not charged in federal court with burglary, aggravated assault, attempted murder, or similar charges; rather, those charges were prosecuted in the state court system. Doc. 11 at 2. Following Dowty's sentencing on the federal charges, he was transported to the Winner City Jail to be held awaiting trial on the state court charges. Doc. 4 at 1.

On July 14, 2011, Dowty received an MRI of his left shoulder. The MRI indicated a large

posterior labral tear. See Doc. 49, Exhibit 1, p.1. A medical record from Dr. Gonzalo Sanchez dated July 29, 2011, recommended that Dowty undergo diagnostic arthroscopy to evaluate the labrum and to evaluate possible repair and distal clavicle excision. See Doc. 49-1 at 4. Dr. Sanchez's note indicated that any diagnostic arthroscopy would need to be approved by the prison system, in that Dowty was at that time a federal inmate being housed at the Hughes County Jail. Doc. 66-1 at 24-25.

Since being transferred to the Winner City Jail, Dowty has repeatedly requested surgery for his left shoulder. On February 8, 2012, Sheriff Waukazoo consulted with Dowty's medical care providers and inquired whether Dowty suffered from an acute or escalating condition and whether a delay in providing the surgery to his left shoulder would adversely affect his prognosis. Doc. 66-3; Doc. 66-4. The medical care providers—Dr. Gonzalo Sanchez and Dr. Stephen Stout—both advised Sheriff Waukazoo in writing that Dowty did not suffer an acute or escalating condition with respect to his left shoulder, and that a delay in providing the arthroscopic surgery would not adversely affect his prognosis. Doc. 66-3; Doc. 66-4. Although he has not undergone surgery, Dowty is being given pain medication while in custody at the Winner City Jail. Doc. 66 at ¶¶ 13-14; Doc. 49-1 at 10-12. Dowty maintains that the medication is inadequate to resolve his shoulder pain. No medical records suggest that a delay in providing the left shoulder surgery will adversely affect Dowty's prognosis.

Dowty has complained of pain in his right shoulder. Doc. 49-1 at 8. During his incarceration at the Winner City Jail, Dowty has been receiving various pain medications for his shoulders and knee condition including cyclobenzaprine, aspirin, and ibuprofen. Id. at 14. On October 22, 2011, Dr. Tony Berg injected methylprednisolone acetate into Dowty's right shoulder. Id. at 13, 31. On October 10, 2011, Dr. Berg recommended Dowty be seen by an orthopedic surgeon to evaluate his

right shoulder condition. Id. at 16. On January 13, 2012, Dowty was once again seen by Dr. Berg for right shoulder and left knee pain. Id. at 20. On January 27, 2012, Dowty underwent an MRI examination on his right shoulder. The examination revealed extensive tearing of the posterior labrum and AC joint degenerative change. Id. at 5-6. On February 23, 2012, Dowty was seen by Dr. Berg for pain in both shoulders. Dr. Berg prescribed a pain reliever, Tramadol. Id. at 24. There is no evidence that any medical professional prescribed treatment for Dowty's right shoulder condition other than pain medication. The evidence in the record demonstrates that Dowty has regularly been provided the pain medication for his medical conditions.

On February 8, 2012, Sheriff Waukazoo wrote to Dr. Berg inquiring whether Dowty's right shoulder condition was an acute medical condition requiring immediate medical care, or whether any delay in providing treatment to the right shoulder would adversely affect Dowty's prognosis. Dr. Berg, on February 12, 2012, answered both questions in the negative. Doc. 66-1. On April 18, 2012, Sheriff Waukazoo once again contacted Dr. Berg to inquire whether his opinion had changed regarding Dowty's right shoulder condition. On April 20, 2012, Dr. Berg responded that his opinion had not changed. Doc. 66-5.

Dowty has requested medical attention for pain in his left knee. Doc. 49-1 at 8, 14. On January 13, 2012, Dowty saw Dr. Berg for pain in his right shoulder and left knee. Id. at 20. On January 27, 2012, Dr. Christopher Stanley, a radiologist, submitted a report on the MRI of Dowty's left knee. He found normal ligaments and tendons but a small amount of swelling and a small focus of high grade chondromalacia at the patellar apex with fissuring of the cartilage and underlying subchondral bone marrow edema. Id. at 7, 9. There is no evidence in the record that any medical professional has recommended any treatment for Dowty's left knee condition other than pain

9

medication. The evidence in the record indicates that Dowty continues to receive all medical pain relievers prescribed by medical professionals and over the counter pain relievers.

On February 8, 2012, Sheriff Waukazoo wrote to Dr. Berg regarding Dowty's left knee condition. Dr. Berg, on February 13, 2012, informed Sheriff Waukazoo that Dowty's left knee condition did not present an acute medical condition requiring immediate medical care, and that any delay in providing medical care for that condition would not adversely affect Dowty's prognosis. Doc. 66-2. On April 18, 2012, Sheriff Waukazoo once again contacted Dr. Berg to inquire whether his opinion had changed regarding Dowty's left knee condition. On April 20, 2012, Dr. Berg responded that his opinion had not changed. Doc. 66-5.

Dowty, as a part of refusing to be deposed, complained of having inadequate access to a suitable oxygen machine. Doc. 93-1. Dowty currently has an oxygen machine in his cell. The oxygen machine is on wheels and can be rolled around easily. It contains a humidifier and approximately 75 feet of hose allowing Dowty great ability to wander freely around the Winner City Jail in all areas accessible to inmates. Doc. 96 at ¶¶ 4-9. Dowty has been provided with three portable oxygen tanks and a cart to permit him to transport the oxygen tanks to any area in the Winner City Jail accessible to inmates. Id. at ¶¶ 6-9.

On March 23, 2012, Dr. Berg recommended that a sleep study be conducted to access whether Dowty suffered from a severe sleep apnea condition. Doc. 49-1 at 27. On March 20, 2012, a sleep study was conducted at the Sanford USD Medical Center. Doc. 89-1 at 1. The report resulting from the sleep study on Dowty was sent to Family Practice in Winner on April 10, 2012. Id. On June 15, 2012, Dowty was provided with a sleep apnea machine from Lin Care. Doc. 97 at ¶ 4.

There is no medical evidence in the record that any of Dowty's medical conditions constitute the type of acute or escalating condition which pose an excessive risk to his health or safety. There is no medical evidence in the record that any delay in providing medical treatment for any of Dowty's medical conditions adversely affect his prognosis. The evidence in the record is undisputed that Dowty is being seen regularly by medical professionals, and that he is receiving medical treatment consistent with that prescribed by health care providers, including pain medication, oxygen, and a sleep apnea machine. As of September 26, 2012, a business record for Mellette County suggested that it had written checks totaling $57,403.77 to house and care for Dowty, of which $32,820.00 appears to be for medical, pharmaceutical, and dental care. Doc. 119-2.

## C. Legal Analysis of Summary Judgment Motion

In screening of this case, this Court allowed Dowty to proceed with his § 1983 claim asserting that Sheriff Waukazoo has him in custody and is ignoring allegedly serious medical needs. Doc. 11 at 2. An analysis of a § 1983 claim begins with identifying the specific constitutional right alleged to have been violated. Graham v. Connor, 490 U.S. 386, 394 (1989). Government officials, like Sheriff Waukazoo, are entitled to qualified immunity for discretionary decisions, unless they violate a clearly established constitutional right. Jones v. Minnesota Dep't of Corr., 512 F.3d 478, 484 (8th Cir. 2008).

Until his convictions by a state court jury on September 27, 2012, Dowty was a pretrial detainee in state custody. For those who have been convicted of a crime and are serving a sentence, the Eighth Amendment is the source of the inmate's right to be free from confinement that is deliberately indifferent to the inmate's serious medical needs. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993); Bell v. Wolfish, 441 U.S. 520, 535 (1979).

11

For a person, like Dowty was prior to September 27, 2012, in state custody awaiting trial, the Fourteenth Amendment's Due Process Clause provides the constitutional source for such a right. Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005); Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003). Thus, Dowty was protected by the Fourteenth Amendment prior to his conviction, and now is protected by the Eighth Amendment from a confinement that involves cruel and unusual punishment through deliberate indifference to serious medical needs.

The standard under the Fourteenth Amendment and Eighth Amendment appears to be identical. Crow, 403 F.3d at 601; Owens, 328 F.3d at 1027; Holden v. Hirner, 663 F.3d 336, 341 (8th Cir. 2011); Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007). Under either the Eighth Amendment or Fourteenth Amendment, a conditions-of-confinement claim requires satisfaction of both an objective component and a subjective component. The objective component requires evidence that an inmate's incarceration poses a substantial risk of serious harm to the inmate. Crow, 403 F.3d at 602; Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003). The subjective component requires proof that jail officials have a sufficiently culpable state of mind in actually knowing, but either disregarding or being deliberately indifferent to, the inmate's health or safety. Crow, 403 F.3d at 602; Pagels, 335 F.3d at 740. As the standard relates to a claim like that of Dowty, the Eighth Circuit has made clear:

> "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.

Dulaney v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (quoting Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996)). For a prisoner to have a claim that constitutional rights are violated through a delay in providing medical treatment, there must be verifying medical information that the jail officials ignored an acute or escalating condition or that the delay adversely affected the inmate's prognosis. Holden, 663 F.3d at 342-43.

The first prong of a § 1983 claim challenging conditions-of-confinement—the objective component—requires that the incarceration pose a substantial risk of serious harm. This objective component requires that the inmate suffer from an objectively serious medical need. Id. at 342. The Eighth Circuit has defined a "serious medical need" as "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Id. (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)).

This Court has recognized that "Dowty has serious medical conditions in his shoulders and what appears to be a somewhat less serious medical condition with his left knee." Doc. 82 at 2. Although Dowty's medical conditions are serious, the term "serious medical need" is a term of art, meaning something different than a serious medical condition. Rather, a serious medical need is one that exposes the inmate to a substantial risk of serious harm. Coleman, 114 F.3d at 785; Farmer, 551 U.S. at 838. Dowty's serious medical conditions are being treated by jail officials through prescriptions and visits to medical professionals. Dowty, however, wants more—surgical intervention. There is no evidence in the record that any physician has recommended surgery to Dowty's right shoulder or left knee. Dr. Sanchez recommended diagnostic arthroscopic surgery with possible repair for Dowty's left shoulder. Doc. 46-1; Doc. 46-2; Doc. 49-1. When Sheriff

13

Waukazoo inquired whether Dowty suffered from an acute or escalating condition and whether a delay in providing surgery to the left shoulder would adversely affect his prognosis, Dr. Sanchez, as Dr. Stout later did as well, in writing stated that Dowty did not suffer from an acute or escalating condition with respect to his left shoulder and that a delay in providing the arthroscopic surgery would not adversely affect his prognosis. Doc. 66-3; Doc. 66-4. Thus, the delay in surgery to Dowty's left shoulder does not pose "an excessive risk to inmate health or safety." See Farmer, 511 U.S. at 838; Coleman, 114 F.3d at 785, 786; see also Webb v. Prison Health Services, No. 94-3054-GTV, 1997 WL 298403, at *2 (D. Kan. May 7, 1997) (inmate's degenerative rotator cuff was not sufficiently serious medical need to satisfy objective test).

Viewing the facts in the light most favorable to Dowty, Dowty has serious medical conditions to both shoulders and a somewhat less serious condition to his left knee. However, the facts not subject to genuine dispute establish that Dowty is not in "serious medical need" of surgery on either shoulder or the left knee. As a matter of law, Dowty cannot meet the objective component to maintain a § 1983 conditions-of-confinement claim.

The subjective component of a condition-of-confinement claim requires that the jail officials must actually know of, but disregard or be deliberately indifferent to, the health and safety of Dowty. Crow, 403 F.3d at 602; see also Farmer, 511 U.S. at 835-38; Helling, 509 U.S. at 31; Holden, 663 F.3d at 343. After all, the Eighth Amendment does not outlaw cruel and unusual "conditions," but rather cruel and unusual punishments. Farmer, 511 U.S. at 837; Hott v. Hennepin County, 260 F.3d 901, 905 (8th Cir. 2001). The Supreme Court of the United States has rejected an objective test for "deliberate indifference" instead adopting a requirement that there be actual subjective knowledge on the part of the government official. As the Supreme Court stated in Farmer:

> [T]he official must both be aware of facts from which the inference
> could be drawn that a substantial risk of serious harm exists, and he
> must also draw the inference . . . [A]n official's failure to alleviate a
> significant risk that he should have perceived but did not, while no
> cause for commendation, cannot under our cases be condemned as the
> infliction of punishment.

Farmer, 511 U.S. at 837.

As a matter of law, Dowty cannot meet the subjective requirement even when the facts are viewed in the light most favorable to Dowty. Sheriff Waukazoo has consulted with Dowty's medical providers. Each of them—Dr. Sanchez, Dr. Stout, and Dr. Berg—wrote back to advise that Dowty's medical issues are not acute medical conditions requiring immediate medical care and that any delay in providing medical care for the conditions would not adversely affect Dowty's prognosis. Sheriff Waukazoo, who is not a medical professional, is entitled to rely upon the opinions of those doctors who are actually treating and trained to treat inmates like Dowty. Holden, 663 F.3d at 343.

Moreover, the record establishes that Sheriff Waukazoo has authorized Dowty to receive pain medication and treatment during his incarceration. Doc. 46 at 2; Doc. 49 at 5; Doc. 49-1 at 21-23; Doc. 53 at 3; Doc. 56 at 4; Doc. 58 at 3; Doc. 61 at 3; see also Doc. 119. With Dowty having received ongoing medical attention and prescriptions, he does not have a viable claim that Sheriff Waukazoo has been deliberately indifferent to his serious medical needs. See Ankeney v. Zavaras, No. 09-cv-02085, 2012 WL 224441, at *4 (D. Colo. Jan. 25, 2010) (inmate who received examination, x-rays, and pain medication for knee complaints cannot establish deliberate indifference to knee condition).

Dowty's insistence on surgery on his left shoulder represents a disagreement with Sheriff Waukazoo over the proper course of treatment. The Eighth Circuit, however, has made clear that

15

"[p]risoners do not have a constitutional right to any particular type of treatment." Long, 86 F.3d at 765. That is, Sheriff Waukazoo does not violate Dowty's constitutional right simply because he has refused to accommodate Dowty's requested course of treatment. Id.

## III. Conclusion

For the reasons explained above, summary judgment for Defendant is appropriate. Therefore, it is hereby

ORDERED that Plaintiff's motions filed as Doc. 84, Doc. 85, Doc. 87, Doc. 89, Doc. 90, Doc. 91, Doc. 101, Doc. 102, Doc. 104, Doc. 105, Doc. 106, Doc. 109, Doc. 112, and Doc. 113 are denied. It is further

ORDERED that Defendant's motions filed as Doc. 92 and Doc. 94 are denied. It is finally

ORDERED that Defendant's Motion for Summary Judgment, Doc. 98, is granted and that summary judgment enter for Defendant and against Plaintiff on all claims.

Dated October **16**, 2012.

BY THE COURT

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE